UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JEFFREY A. AINSWORTH**, *et al.*,<br><br>　　　　*Plaintiffs,*<br><br>**v.**<br><br>**ISLAMIC REPUBLIC OF IRAN**, *et al.*,<br><br>　　　　*Defendants.* | **Case No. 1:23-cv-2424-RCL** |

## MEMORANDUM OPINION

In this case, 144 individual plaintiffs bring 348 claims pursuant to the Foreign Sovereign Immunities Act ("FSIA") against the Islamic Republic of Iran and Ministry of Information and Security for direct and indirect injuries sustained due to the 1983 bombing of the U.S. Marine Barracks in Beirut, Lebanon. Because the defendants have not appeared or defended this action, the plaintiffs now move for default judgment as to the defendants' liability and, in support of the motion, ask the Court to take judicial notice of its previous factual findings establishing Iran's liability for the Beirut attack in *Peterson v. Islamic Republic of Iran*. *See* ECF No. 23. For the reasons addressed below, the Motion is hereby **GRANTED**.

## I.　BACKGROUND

The facts concerning the 1983 Beirut bombing have been described at length in earlier related cases. *See, e.g.*, *Peterson v. Islamic Republic of Iran*, 264 F. Supp. 2d 46, 48–59 (D.D.C. 2003). The Court therefore recites only the key facts here. The 1983 bombing of the U.S. Marine barracks in Beirut was perpetrated by Hezbollah, a designated foreign terrorist organization that operates in Lebanon. *Id.* at 51. On the morning of October 23, 1983, Hezbollah members drove an explosive-laden truck disguised as a water delivery vehicle into the U.S. Marine barracks near Beirut International Airport, where they detonated the equivalent of

1

15,000 to 21,000 pounds of dynamite.  *Id.* at 56.  As a result of the bombing, 241 United States servicemembers died and many others suffered injuries.  *Id.* at 58.  At the time of the bombing, Hezbollah received a variety of political, financial, and operational support from Iran, including support tied directly to the attack.  *Id.* at 53–54, 58.

The plaintiffs in this case are 144 direct and indirect victims of the bombing.  The operative complaint was filed on September 13, 2023.  *See* ECF No. 5.  The State Department effectuated diplomatic service on the defendants on July 2, 2024.  *See* ECF No. 20.  After the defendants failed to answer, the plaintiffs filed a default affidavit and the Clerk entered the defendants' default.  *See* ECF Nos. 21–22.  The plaintiffs now move for default judgment and the taking of judicial notice of the evidence in *Peterson.*  *See* ECF No. 23.

## II.    LEGAL STANDARDS

### a.  Motion for Default Judgment

The Clerk of the Court must enter a party's default when the party "against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a).  But even after a defendant has failed to appear, "the entry of a default judgment is not automatic."  *Mwani v. bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005).  Rather, the FSIA provides that "[n]o judgment by default shall be entered . . . against a foreign state . . . unless the claimant establishes his claim or right to relief by evidence satisfactory to the court." 28 U.S.C. § 1608(e).

The evidentiary showing needed to satisfy the default-judgment standard under § 1608(e) "can be less than that normally required."  *See Owens v. Republic of Sudan*, 864 F.3d 751, 785 (D.C. Cir. 2017) (citation omitted), *vacated and remanded on other grounds sub nom.*, *Opati v. Republic of Sudan*, 590 U.S. 418 (2020).  The core of § 1608(e) is that courts may not "simply accept a complaint's unsupported allegations as true."  *Rimkus v. Islamic Republic of Iran*, 750

F. Supp. 2d 163, 171 (D.D.C. 2010).  But "the FSIA leaves it to the court to determine precisely how much and what kinds of evidence the plaintiff must provide, requiring only that it be 'satisfactory to the court.'"  *Han Kim v. Democratic People's Republic of Korea*, 774 F.3d 1044, 1047 (D.C. Cir. 2014) (quoting 28 U.S.C. § 1608(e)).  As a corollary, the FSIA "does not require a court to step into the shoes of the defaulting party and pursue every possible evidentiary challenge."  *Owens*, 864 F.3d at 785.

### b.  Judicial Notice

Federal courts may take judicial notice of adjudicative facts that are "not subject to reasonable dispute" and that are "either (1) generally known within the territorial jurisdiction . . . or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  "This rule permits courts to take judicial notice of court records in related proceedings."  *Fain v. Islamic Republic of Iran*, 856 F. Supp. 2d 109, 115 (D.D.C. 2012); *see also Salazar v. Islamic Republic of Iran*, 370 F. Supp. 2d 105, 109 n.6 (D.D.C. 2005).  The Court still must "reach its own, independent findings of fact" notwithstanding the findings made in prior cases implicating the same issues, but it "may review evidence considered in an opinion that is judicially noticed, without necessitating the re-presentment of such evidence."  *Rimkus*, 750 F. Supp. 2d at 172 (citation omitted).

## III.   ANALYSIS

### i.   Jurisdiction

The FSIA is "the sole basis for obtaining jurisdiction over a foreign state in [U.S.] courts."  *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989).  The statute establishes a presumption of immunity subject to enumerated exceptions.  *See* 28 U.S.C. §§ 1604–07.  "Whenever an FSIA immunity exception applies, jurisdiction usually follows," because the statute tethers "both subject-matter and personal jurisdiction to the exceptions."

*CC/Devas (Mauritius) Ltd. v. Antrix Corp.*, 605 U.S. 223, 230 (2025).  For purposes of federal subject-matter jurisdiction, district courts enjoy "original jurisdiction" over "any claim for relief in personam with respect to which the foreign state is not entitled to immunity" under an enumerated exception.  *Id.* (quoting 28 U.S.C. § 1330(a)).

In cases premised on the FSIA, personal jurisdiction flows from the existence of subject-matter jurisdiction and proper service of process.  "Personal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have [subject-matter] jurisdiction under subsection (a) where service has been made under section 1608 of this title."  *Id.* at 232 (alterations in original) (quoting 28 U.S.C. § 1330(b)); *see also* 28 U.S.C. § 1608 (identifying service procedures for foreign-sovereign defendants).  Thus, "personal jurisdiction over a foreign sovereign is 'automatic' whenever (1) 'an exception to immunity applies' and (2) 'service of process has been accomplished.'"  *CC/Devas*, 605 U.S. at 232 (quoting *Samantar v. Yousuf*, 560 U.S. 305, 324 n.20 (2010)).  The exceptions thus have the dual effect of establishing subject-matter jurisdiction while supplying, for purposes of personal jurisdiction, "varying degrees of suit-related domestic contact before a case may proceed."  *Id.* at 233.

The Court may exercise subject-matter jurisdiction over this dispute and personal jurisdiction over the defendants.  This case fits within the FSIA's state-sponsored terrorism exception.  The terrorism exception strips immunity in cases seeking "money damages . . . against a foreign state for personal injury or death that was caused by . . . the provision of material support [for terrorism]," where such support was provided by an officer, employee, or agent of the foreign state within the scope of his or her employment.  28 U.S.C. § 1605A(1).  Such is the case here.  The Amended Complaint alleges personal injuries stemming from Iran's material support for Hezbollah in perpetrating the Beirut bombing.  The applicability of the state-

sponsored terrorism exception thus places this matter within the Court's subject-matter jurisdiction. And paired with proof of diplomatic service on the defendants on July 2, 2024, *see* ECF No. 20, the Court may exercise personal jurisdiction over the defendants as well. *CC/Devas*, 605 U.S. at 233 ("[S]ubject matter jurisdiction plus service of process equals personal jurisdiction." (quoting *GSS Grp. Ltd. v. Nat'l Port Auth.*, 680 F.3d 805, 811 (D.C. Cir. 2012))).

### ii.    Default Judgment

The Court now turns to the merits of the plaintiffs' request for default judgment as to liability. Under the FSIA, a Court must ensure that plaintiffs "establish [their] claim or right to relief by evidence that is satisfactory to the court." 28 U.S.C. § 1608(e). The evidence presented in *Peterson v. Islamic Republic of Iran* provides much of the factual basis necessary to establish the plaintiffs' entitlement to relief. Although earlier judicial findings of fact "represent merely a court's probabilistic determination as to what happened" and thus constitute hearsay and are ordinarily inadmissible, the FSIA "permits courts in subsequent related cases to rely upon the evidence presented in earlier litigation . . . without necessitating the formality of having that evidence reproduced." *Anderson v. Islamic Republic of Iran*, 753 F. Supp. 2d 68, 75 (D.D.C. 2010); *see also Goldberg-Botvin v. Islamic Republic of Iran*, No 1:12-cv-1292, 2013 WL 1343663, at *1 n.1 (D.D.C. Apr. 4, 2013). This case concerns the same subject matter as *Peterson*: the terrorist attack upon the headquarters of Marine unit in Beirut on October 23, 1983. It also concerns the same actors: the Islamic Republic of Iran and its intelligence service. The evidence presented in the *Peterson* case pertaining to the Beirut attack meets the requirements of Rule 201 of the Federal Rules of Evidence, which states that judicially noticeable facts are those that are "capable of ready and accurate determination" based on the judicial records maintained in that case. Fed. R. Evid. 201(b). And the evidence — albeit not the findings of fact drawn

from them in the prior cases — is "not subject to reasonable dispute." *Id.*; *see also Fain*, 856 F. Supp. 2d at 116 (distinguishing judicial notice of "factual findings," which constitute hearsay, from that of "evidence presented in their earlier cases," from which subsequent "courts may reach their own independent findings of fact"). This Court and other sessions in this District have "frequently taken judicial notice of earlier, related proceedings" based on the same reasoning, including in prior cases against Iran and its affiliates stemming from the Beirut attack. *Fain*, 856 F. Supp. 2d at 115. The Court concludes that judicial notice is appropriate here.

The taking of judicial notice in conjunction with the plaintiffs' affidavits asserting that each suffered direct or indirect injuries stemming from the by the attack, *see* ECF No. 23-3, establishes the defendants' liability in this case under 28 U.S.C. § 1605A. *Compare Fain*, 856 F. Supp. 2d at 118–19 (granting default judgment as to liability based on *Peterson* evidence and plaintiffs' affidavits), *with Spencer v. Islamic Republic of Iran*, 922 F. Supp. 2d 108, 109–10 (D.D.C. 2013). In particular, the affidavits satisfactorily establish both causation and status. *See* 28 U.S.C. § 1605A(a)(1), (c)(1)–(4). Because the plaintiffs have only moved for default judgment as to liability and not damages, the Court need not address whether the evidence presented demonstrates that each individual plaintiff is entitled to damages, which will instead be reserved for a special master.

## IV.   CONCLUSION

Based on the foregoing, the Motion is hereby **GRANTED**. A separate order and judgment shall issue this date.

**SO ORDERED.**

Date: _____2/10/26_____

_____
Royce C. Lamberth
United States District Judge